## DREYFUSS & SON et al. v. BENSON.[*]
### (No. 8623.)

(Court of Civil Appeals of Texas. Dallas. Feb. 25, 1922. Rehearing Denied March 25, 1922.)

1. Corporations ⚖=181(3)—Letter informing stockholder as to exercise of option to repurchase stock held not to divest him of ownership so that he was still entitled to inspection of books.

Where a certificate of stock transferred to an employé gave the transfer option to repurchase on termination of employment, at its book value as shown by the next preceding inventory of the corporation, the transferor's letter to the employé following termination of employment informing him of his exercise of the option giving the book value of the stock "as shown by the audit," and stating that amount of employé's indebtedness to corporation and which had been assigned to him would be offset against amount due the employé on such stock and asking if such settlement was satisfactory, did not divest the employé of the ownership of the stock, and he had the right before parting with it to satisfy himself as to the correctness of the audit by an examination of the corporate books.

**2. Corporations ⬥181(1)—Stockholder's right to inspect books not an absolute right regardless of motives.**

The stockholder's right to inspect the books of the corporation under Rev. St. art. 1160, is not an absolute right regardless of motives.

**3. Mandamus ⬥168(2)—Corporation resisting stockholder's right to inspect books has burden of pleading and proving stockholder actuated by corrupt motives.**

Under Rev. St. art. 1160, a corporation resisting the right of a stockholder to inspect the corporate books has the burden of pleading and proving that the stockholder if seeking to inspect the books is actuated by corrupt motives; the burden of proving good faith not being on the stockholder.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Mandamus by C. L. Benson against Dreyfuss & Son and others. From judgment granting application for writ, defendants appeal. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellants.

D. A. Eldridge and Rosser J. Coke, both of Dallas, for appellee.

HAMILTON, J. This is an appeal prosecuted from a judgment of the district court granting appellee's application for writ of mandamus and directing appellant and its officers to "permit and allow" appellee to examine and inspect the books, records, and papers of appellants at reasonable times during business hours with the aid of such accountants, attorneys, or stenographers as he might select.

The case was submitted to a jury upon two special issues in connection with a peremptory instruction that the evidence showed appellee to be a stockholder in the corporation. The special issues submitted and the respective answers thereto were as follows:

"Special Issue No. 1. Do you find and believe from the evidence that the plaintiff's request to examine the books was made in good faith? (Answer yes or no.) Answer: Yes.

"Special Issue No. 2. Do you find and believe from the evidence that the request of the plaintiff to examine the books of the defendant was made with the intent to annoy and harass the defendants? (Answer yes or no.) Answer: No."

Appellee was an employé of Dreyfuss & Son from August, 1911, until about March, 1920. During this time appellant became the owner of 200 shares of the capital stock of Dreyfuss & Son, a corporation. This stock was purchased from S. Dreyfuss, and on the back of each certificate issued to appellee the following indorsement was made at the time of the purchase:

"In consideration of the sale and transfer to the undersigned of the shares of capital stock of Dreyfuss & Son, a corporation, evidenced by this certificate, it is agreed and understood that in the event the undersigned shall for any cause cease to be an employé of said corporation, or for any cause desire to dispose of his stock at any time, then and in any such event, there is hereby granted to S. Dreyfuss, transferor hereof, the right, at his option, to purchase said stock at its book value as shown by the date of the next preceding inventory of said corporation, and this stock shall not be transferable in any wise, either law or equity, to any other person unless said S. Dreyfuss shall have refused to exercise his said option."

About the 1st day of March, 1920, appellee's employment was terminated. Two or three days thereafter he made demand upon the officers of the corporation for the privilege of inspecting the books and records. After conference between appellee and the officers of the company concerning the matter, appellee's request to be permitted to inspect and examine the books, records, etc., was refused. Following this action, on the 5th day of March, he made application for the writ of mandamus. Subsequently, on March 15, 1920, appellant Sol Dreyfuss wrote and transmitted to appellee by special delivery the following communication:

"Upon your severing your connection as an employé with the corporation of Dreyfuss & Son, I exercised my option to buy your shares of stock in that association which I had transferred to you and which I had and still have in my possession, at the book value as shown by the audit, of $147,035.54 per share; which, after crediting you with the amount of your indebtedness to me by note for the purchase of said stock, left me due you a balance.

"Against this balance I am offsetting the amount of your indebtedness to Dreyfuss & Son, which has been transferred by the corporation to me, amounting to $3,287.90. I also hold your note for $1,750, which I signed as surety for you, executed on December 13, 1919. and payable to the order of the City National Bank of Dallas, and I am charging this amount to your account on the indebtedness due by me to you for the shares of stock hereinbefore mentioned.

"Kindly advise if this is satisfactory and kindly take notice of my action, which I trust you will find satisfactory.

"I shall be very glad to pay you the balance due for your stock, arrived at on the basis herein indicated, as soon as you express your wish to receive it."

Appellants insist that at the time the audit was demanded appellee was not a stockholder in the corporation, and assert that the evidence without conflict showed that he had severed his connection with the corporation, that the contract reflected by the indorsement on the stock certificates gave Sol Dreyfuss the right at his option, in the event of appellee's severing his relations

with the company, to purchase the stock under the conditions there recited, and that Sol Dreyfuss had notified him of his exercise of such option, so that when the suit was brought the only act left to be performed to completely execute the contract was the payment of the book value of the stock when such value was ascertained; Sol Dreyfuss being ready, willing, and able to make payment at such time.

Under the foregoing views appellants assert that appellee had ceased to be a stockholder before the suit was filed, and that therefore the jury should have been instructed to return a verdict for appellants.

Complaint is made that the court erred in instructing the jury that the appellee was a stockholder in the corporation because the testimony was insufficient to warrant the court in taking this issue from the jury and giving such peremptory instruction. This complaint is based upon the same view of the facts upon which is based the above-mentioned assignment of error complaining that the jury should have been instructed to return a verdict in favor of appellants.

[1] The indorsement which each certificate of stock transferred to Benson bears, as above copied, gave S. Dreyfuss the right, at his option, to purchase the stock at the value to be ascertained as prescribed by the terms of this indorsement. Upon such stipulation alone rested the right to exercise the option. There is no proof that it was exercised beyond the proof revealed by and relating to the terms of the communication dated March 15, 1920. The indorsement was not in the nature of an agreement to buy the stock. It did not constitute a contract of sale, but was only an option to be exercised by appellee upon the terms it provided. It did not obligate Dreyfuss at all. In this respect it is distinguished from the transaction considered in the case of State v. Wheless, 104 La. 125, 28 South. 922, relied upon by appellants. The option had not been exercised when the suit was filed. The stock was then owned by appellee, and we do not think the act of sending the letter dated March 15, 1920, operated to effect a transfer of ownership from appellee to Dreyfuss. It was rather notice of his purpose to exercise it in the manner indicated in the letter. The letter contained a proposition of general settlement of account mutually existing between the two, as well as notice of a purpose to buy the stock under the option. Dreyfuss could obtain the right asserted only by actual performance through making or tendering payment. Killough v. Lee, 2 Tex. Civ. App. 260, 21 S. W. 970. But appellants insist that tender in this case would have been an idle ceremony, because the record conclusively shows that it would have been declined. If this is conceded, so that the question of actual tender ceases to have any controlling effect, yet we think the result

of what Dreyfuss did was not to put the ownership of the stock in him. His statement of the value of the stock contained in the letter was not binding upon appellee, and appellee had the right, before parting with his title on that basis, to satisfy himself as to the correctness of the audit.

We find that under the facts of the case appellee has not parted with his title to the stock, but is the owner of it. Accordingly, the first and second assignments of error are overruled.

Appellants assert that the court committed reversible error in submitting to the jury the above-copied special issues. They undertake to maintain that the submission of these issues was erroneous, because, as they view the evidence, there was no substantial proof of any necessity for an audit of the business and also because the evidence showed without substantial conflict that an audit would be useless and also would be attended with annoyance and inconvenience; and further that the evidence showed that appellant's motive in demanding an audit was to harass, annoy, and disturb the corporate defendant.

We will not go through the more or less laborious process of setting forth the evidence. We merely state that after a careful examination of all the proof we find that there is evidence in the record sufficient to sustain the submission of the two issues and also the answers of the jury disposing of them. Being of this opinion, we must respect the judgment effectuating these findings in the absence of some error otherwise appearing which requires that it be disapproved.

[2, 3] However, we do not hold that appellee's counter contention is correct to the extent that it declares article 1160 of the Revised Civil Statutes gives appellee, by virtue of his being a stockholder, the absolute right to inspect the books and records at reasonable hours regardless of his motives. To hold this would mean that a court should compel a corporation under this law to open its books and records to a stockholder regardless of whether he is prompted by motives wholly evil and corrupt to seek the information they might reveal. Following a decision which seems to have soundly construed this statute brings us into conflict with appellee's sweeping declaration of its force. Roberts v. Munroe (Tex. Civ. App.) 193 S. W. 734. On the other hand, we do not think that the common-law rule requiring a stockholder of a corporation who seeks access to its records to prove good faith prevails against the provisions of this statute. The effect of the statute, at least, is to put upon a corporation, when it resists such right of inspection by a stockholder, the requirement to plead and prove corrupt motives actuating the stockholder. This is the greatest extent of laxity in this respect which,

in our opinion, should be indulged in construing this statute, the terms of which strongly indicate that it was intended altogether to remove the common-law rule that an examination can be compelled only where the stockholder asks for it in good faith and for reasons connected with his rights as a stockholder.

The weight of authority in America seems to be to the effect that where the right is statutory the stockholder is not required to show the purpose of his inspection and that the right cannot be defeated by showing an improper motive. Venner v. Ry. Co., 246 Ill. 170, 92 N. E. 643, 138 Am. St. Rep. 229, 20 Ann. Cas. 607.

The remaining assignments presented we have concluded require no particular discussion. They present matters involving the exercise of sound discretion by the trial court. The record discloses no abuse of discretion in relation to them, and we therefore overrule, without comment, the propositions advanced to support them.

The judgment is affirmed.